1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                     NORTHERN DISTRICT OF CALIFORNIA

10                            San Francisco Division

11   CHANEL, INC.,
                                              Case No. 16-cv-00307-LB
12               Plaintiff,

13         v.                                 **ORDER FOR REASSIGNMENT;
                                              REPORT AND RECOMMENDATION
14   TERESA CHARLES,                          TO GRANT THE PLAINTIFF'S
                                              MOTION FOR DEFAULT JUDGMENT**
15               Defendant.
                                              Re: ECF No. 21
16

17                               **INTRODUCTION**

18         Chanel sued Teresa Charles for trademark infringement, unfair competition, and false

19   advertising, charging that Ms. Charles uses two Chanel trademarks without its authorization on

20   products that she sells on Shopify.com, Instagram, and Pinterest.[1] Ms. Charles did not respond to

21   the complaint or otherwise defend the case. Chanel moved for default judgment and a permanent

22   injunction (but did not ask for fees or statutory damages).  Chanel consented to the undersigned's

23   jurisdiction but Ms. Charles obviously did not. The court thus directs the Clerk of Court to

24   reassign the case to a district judge and recommends that the district judge grant Chanel's motion

25   and permanently enjoin Ms. Charles's continuing wrongful conduct. Chanel will be prejudiced if

26

27   ─────────────────────
     [1] *See generally* Compl. – ECF No. 1. Record citations refer to material in the Electronic Case File
28   ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

United States District Court
Northern District of California

1   judgment is not entered, the complaint establishes viable claims, there is no money at stake, and

2   there is no evidence of a factual dispute or Ms. Charles's excusable neglect.

3

4                                        **STATEMENT**

5   **1.  The Chanel brand and the trademarks at issue**

6        Chanel is a fashion company that manufactures and sells "luxury consumer products" and is

7   recognized as a "leader in the field of fashion and beauty."[2] Chanel identifies its products by two

8   trademarks: 1) the "Chanel" mark and 2) the "CC Monogram" mark, which consists of two

9   interlocking back-to-back letter C's, as shown here:[3]



14  Chanel owns more than 50 combined federal trademark registrations on the two marks, 42 of

15  which are incontestable.[4] It has used the marks in the United States for more than eight decades;

16  registrations on the two marks date back to 1925.[5]

17       Chanel uses the marks on a range of products, including "clothing, shoes, handbags, wallets,

18  jewelry, fashion accessories, beauty products, and eyewear."[6] Chanel also uses the marks on other

19  products, such as beach towels, yoga mats, basketballs, and surfboards, and has repurposed its

20  "most iconic products," *e.g.*, it made a clutch bag in the form of its No. 5 perfume.[7] These

21  products are sold in department stores, authorized internet retailers, and "Chanel's own website

22  and stand-alone boutiques."[8]

---

[2] Compl. – ECF No. 1, ¶¶ 1, 9.

[3] *Id.* ¶ 10.

[4] *Id.* ¶¶ 22-24, Ex. A.

[5] *Id.* ¶¶ 11, 22.

[6] *Id.* ¶ 12.

[7] *Id.* ¶¶ 13-15.

[8] *Id.* ¶ 18.

*United States District Court*
*Northern District of California*

The Chanel marks also are featured elsewhere. For example, Chanel uses the marks on "packaging, hangers, labels[,] and hangtags."[9] The marks are "featured prominently in national print and television advertising seen regularly by hundreds of millions of people and are promoted on Chanel's" and third-parties' websites.[10] The press "frequently highlights" Chanel-marked products and some of the products (and the marks) have been featured in Chanel-focused exhibitions.[11]

The use, advertising, and unsolicited press coverage have enhanced the public's recognition of the two marks.[12] Consumers "associate Chanel with any goods on which its iconic marks are placed[;]"[13] they are "renowned for their high quality and are identified and recognized as being exclusively from Chanel[.]"[14] Both marks "[have] acquired enormous value and become famous" — "Chanel's yearly sales of products bearing or sold under the Chanel Marks in the United States total in the hundreds of millions of dollars."[15] Chanel alleges that Ms. Charles is using the marks to take advantage of this value.[16]

**2.  Ms. Charles's alleged infringement**

Ms. Charles owns Suite 888, a business through which she advertises and sells products bearing Chanel's marks.[17] The majority of products she sells use the marks, including "lamps, decorative perfume bottles, trays, towels, robes, bedding, candles, pillow covers, rugs, decorative boxes, chairs[,] and stools."[18] Ms. Charles also has copied Chanel's recognized perfume No. 5

---

[9] *Id.* ¶ 20.

[10] *Id.*

[11] *Id.* ¶¶ 16, 21.

[12] *Id.* ¶¶ 17, 21, 25.

[13] *Id.* ¶ 17.

[14] *Id.* ¶ 19.

[15] *Id.* ¶¶ 19, 25.

[16] *See id.* ¶ 30.

[17] *Id.* ¶¶ 26, 28.

[18] *Id.* ¶ 28.

United States District Court
Northern District of California

bottle design and (like Chanel) has repurposed the design for decorative items.[19] Chanel alleges that Ms. Charles's use of the marks and other Chanel-brand indicia is intended to falsely suggest that they come from Chanel.[20]

Ms. Charles operates Suite 888 through Shopify.com (at suite888.myshopify.com), Instagram (profile name Suite888), and Pinterest (profile name Croquis Home Décor or Croquisdecor).[21] She allegedly targets "consumers who are familiar with the Chanel Marks" and falsely advertises Suite 888's goods as Chanel products on her Pinterest page.[22] Despite her use of the marks and advertising, Ms. Charles, Suite 888, and the Doe defendants "are not associated or affiliated with Chanel and have never been authorized or otherwise licensed to use the Chanel Marks[.]"[23]

### 3. Procedural history

Before suit, Chanel sent Ms. Charles a cease-and-desist letter "demanding that [she] immediately cease the sale of" products bearing the marks.[24] Chanel also sent four subsequent letters, but Ms. Charles did not respond to any of them.[25] Three of the letters were returned by a Ms. Lydia Finch, who claimed that Ms. Charles did not reside at the address.[26] Chanel alleges that "Lydia Finch" is an alias for Ms. Charles.[27]

Chanel then sued Ms. Charles and several Doe defendants.[28] The complaint alleges seven claims for relief under the federal Lanham Act and California law: 1) trademark infringement, 15 U.S.C. § 1114(1); 2) trademark infringement and counterfeiting, *id.*; 3) unfair competition, *id.*

---

[19] *Id.* ¶¶ 31, 33.

[20] *Id.* ¶ 32.

[21] *Id.* ¶ 27.

[22] *Id.* ¶¶ 34-35, Ex. D.

[23] *Id.* ¶ 36.

[24] *Id.* ¶ 38.

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] *See generally id.*

United States District Court
Northern District of California

§ 1125(a)(1)(A); 4) false advertising, *id.* § 1125(a)(1)(B); 5) trademark dilution, *id.* § 1125(c); 6) California unfair competition, Cal. Bus. & Prof. Code §§ 17200 *et seq.*; and 7) California trademark dilution, *id.* §§ 14330 *et seq.*[29]

The court's order at ECF No. 14 recounts Chanel's efforts to serve Ms. Charles. On January 19, 2016, Chanel filed the complaint.[30] The summons issued on January 21, 2016.[31] Before filing the lawsuit, Chanel confirmed Ms. Charles's apparent physical address at 1400 Carpentier St., Apt. 101, San Leandro, CA 94577, which was the return address on a box containing an infringing product that Ms. Charles shipped on December 14, 2015.[32] Chanel used a private investigator to try to serve Ms. Charles at the Carpentier address four times from January 26 to January 29, 2016; during one visit, the apartment manager told him that the property manager also tried unsuccessfully to serve Ms. Charles with a lawsuit for outstanding property-association fees.[33] Another investigator tried to call Ms. Charles's cellphone during the service attempts.[34]A maintenance worker told the investigator that Ms. Charles came to the Carpentier address only every several weeks, identified her parking sport as spot 64, and described her car as a Blue Honda.[35] On January 29, someone at the complex called the investigator with news that the car was there; the investigator arrived, saw the car in the spot, rang the doorbell, and received no response.[36] The other investigator called her cellphone and no one answered.[37] Chanel identified an email address that Ms. Charles uses and monitors; it is listed on her selling platform at

---

[29] *Id.* ¶¶ 44-89.

[30] Compl. – ECF No. 1.

[31] Summons – ECF No. 8.

[32] Solomon Decl. – ECF No. 11-1, ¶ 3 & Ex. A.

[33] Eastman Decl. – ECF No. 11-2, ¶¶ 2-4.

[34] *Id.* ¶¶ 5-6.

[35] *Id.* ¶ 4.

[36] *Id.* ¶ 6.

[37] *Id.*

United States District Court
Northern District of California

1    Shopify.com, and "Emails were sent to this address on January 26, 2016. The emails were opened,

2    read and responded to[.]"[38]

3        The court thus authorized alternate service by email.[39] Chanel served Ms. Charles by email,

4    but she did not respond or appear in the case.[40] Chanel sought, and the Clerk of Court entered,

5    default against Ms. Charles.[41] Chanel then moved for default judgment, seeking only a permanent

6    injunction against further use of the marks (and not damages or fees), and it served its motion on

7    Ms. Charles.[42] The court set the matter for a hearing (as is its practice in default-judgment cases);

8    Chanel served Ms. Charles with notice of the hearing date and time.[43] The court held a hearing on

9    June 9, 2016; Ms. Charles did not appear.[44]

10

11                                        **ANALYSIS**

12   **1.   Jurisdiction and service**

13       Before entering default judgment, a court must determine whether it has subject-matter

14   jurisdiction over the action and personal jurisdiction over the defendant. *See In re Tuli,* 172 F.3d

15   707, 712 (9th Cir. 1999). A court must also ensure the adequacy of service on the defendant. *See*

16   *Timbuktu Educ. v. Alkaraween Islamic Bookstore,* No. C 06–03025 JSW, 2007 WL 1544790,

17   at *2 (N.D. Cal. May 25, 2007). Chanel has satisfied all three requirements.

18       First, the court has federal-question subject-matter jurisdiction over Chanel's federal Lanham

19   Act claims. *See* 28 U.S.C. § 1331. The court consequently has supplemental jurisdiction over

20   Chanel's state-law claims, which relate to and parallel the Lanham Act claims. *See* 28 U.S.C.

21   § 1367.

22

23   ───────────────

24   [38] Solomon Decl. – ECF No. 11-1, ¶ 10.

     [39] *See* Order Authorizing Alternative Service – ECF No. 14.

25   [40] *See generally* Docket.

26   [41] Entry of Default – ECF No. 20.

27   [42] Motion for Default Judgment – ECF No. 21; Certificate of Service – ECF No. 22.

     [43] Certificate of Service – ECF No. 24.

28   [44] Minute Entry – ECF No. 27.

*United States District Court*
*Northern District of California*

Second, the court has personal jurisdiction over Ms. Charles. Ms. Charles "resides or otherwise does business at 1400 Carpentier Street, Apartment 101, San Leandro, California."[45] Living at — or doing business out of — this Northern District address is sufficient to establish personal jurisdiction.

Third, the service by email was adequate, as the court's order at ECF No. 14 explains. To summarize: Chanel confirmed Ms. Charles's address at the 1400 Carpentier apartment through a return address on a shipped infringing product.[46] Chanel then tried unsuccessfully to serve Ms. Charles at this address through its private investigator.[47] Following Chanel's *ex parte* request, the court authorized service on Ms. Charles by email to croquisdecor@gmail.com.[48] The court found that service to this email address was reasonably calculated to give actual notice of the suit because Ms. Charles provided it on her Shopify.com platform, monitored the address, and had previously opened, read, and responded to emails.[49] Service by traditional means was unlikely because Ms. Charles appeared to be ducking Chanel's efforts.[50] Following the court's authorization, Chanel served Ms. Charles by an email to croquisdecor@gmail.com.[51]

## 2. Default judgment

Under Federal Rule of Civil Procedure 55(b)(2), a plaintiff may apply to the district court for — and the court may grant — a default judgment against a defendant who has failed to plead or otherwise defend an action. *See Draper v. Coombs*, 792 F.2d 915, 925 (9th Cir. 1986). After entry of default, well-pleaded allegations in the complaint regarding liability and entry of default are taken as true, except as to damages. *See Fair Housing of Marin v. Combs*, 285 F.3d 899, 906

---

[45] Compl. ¶ 7.

[46] Order Authorizing Alternative Service – ECF No. 14 at 2.

[47] *Id.*

[48] *Id.* at 4.

[49] *Id.*

[50] *Id.*

[51] Summons Returned Executed – ECF No. 15.

1   (9th Cir. 2002). The court need not make detailed findings of fact. *Id.* Default judgment cannot

2   differ in kind or exceed the amount demanded in the pleadings. Fed. R. Civ. P. 54(c).

3       "A defendant's default does not automatically entitle the plaintiff to a court-ordered

4   judgment," *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002); that

5   decision lies within the court's discretion, *Draper*, 792 F.2d at 924-25. Default judgments

6   generally are disfavored because "cases should be decided upon their merits whenever reasonably

7   possible." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). In deciding whether to enter a

8   default judgment, the court considers: "(1) the possibility of prejudice to the plaintiff; (2) the

9   merits of [the] plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of

10  money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether

11  the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of

12  Civil Procedure favoring decisions on the merits." *Id.* at 1471-72.

13

14  **2.1 Possibility of prejudice to the plaintiff (first *Eitel* factor)**

15      The first *Eitel* factor considers whether the plaintiff would suffer prejudice if default judgment

16  is not entered, and whether such potential prejudice to the plaintiff weighs in favor of granting a

17  default judgment. *See Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1054 (N.D.

18  Cal. 2010).

19      Before suing, Chanel sent Ms. Charles five letters, and she did not respond to one.[52] Chanel

20  then filed its complaint on January 19, 2016, which it served on Ms. Charles by email on February

21  24, 2016.[53] Chanel also served Ms. Charles with its current Motion for Default Judgment and the

22  Clerk's Notice setting the hearing date and time.[54] If the court does not grant default judgment and

23  a permanent injunction, and because of Ms. Charles's apparent unwillingness to litigate, Chanel

24  would be left without recourse and will be unable to prevent future infringement. Ms. Charles

25

United States District Court
Northern District of California

---

[52] Compl. ¶ 38.

[53] Compl.; Summons Returned Executed – ECF No. 15 at 2.

[54] Certificates of Service – ECF Nos. 22, 24.

1  would instead be able to continue taking advantage of Chanel's brand, reputation, and goodwill.

2  The possibility of prejudice to Chanel therefore weighs in favor of granting default judgment. *See,*

3  *e.g.*, *Levi Strauss & Co. v. Toyo Enterprise Co., Ltd.*, 665 F. Supp. 2d 1084, 1095 (N.D. Cal.

4  2009).

5

6  **2.2 Merits and sufficiency of the claims (second and third *Eitel* factors)**

7  The second and third *Eitel* factors consider the merits of the claim and the sufficiency of the

8  complaint. *Eitel*, 782 F.2d at 1471-72. "The Ninth Circuit has suggested that [these factors] . . .

9  require that plaintiffs' allegations 'state a claim on which the [plaintiff] may recover.'" *Kloepping*

10  *v. Fireman's Fund*, No. C 94-2684 TEH, 1996 WL 75314, at *2 (N.D. Cal. Feb. 13, 1996) (citing

11  *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)). Chanel's allegations — taken as true —

12  support claims for trademark infringement, unfair competition, false advertising, and trademark

13  dilution.

14

15  **2.2.1 Federal trademark-infringement and unfair-competition claims**

16  Chanel brings separate claims for federal trademark infringement and unfair competition under

17  15 U.S.C. §§ 1114(1) and 1125(a)(1)(A).[55] The same — or nearly identical — standard applies to

18  both. *See Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1046-47 n.8 (9th

19  Cir. 1999); *Chanel, Inc. v. Dudum*, No. C-12-01966 JCS, 2012 WL 5833562, at *5 (N.D. Cal. Oct.

20  29, 2012). The court finds that Chanel's allegations are sufficient.

21  To prevail on a claim for relief, a plaintiff must prove "(1) that it has a protect[a]ble ownership

22  interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer

23  confusion, thereby infringing upon the [plaintiff's] rights to the mark." *Dep't of Parks and*

24  *Recreation for State of California v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006).

25  Courts consider eight factors to determine the likelihood of confusion: "(1) strength of the mark;

26  (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5)

27

28  _____
[55] Compl. ¶¶ 44-62.

United States District Court
Northern District of California

1    marketing channels used; (6) type of goods and the degree of care likely to be exercised by the

2    purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the

3    product lines." *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 632 (9th Cir. 2007) (citing *AMF Inc.*

4    *v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979)). The factors are pliant, and although a

5    court should consider all of them, a plaintiff need not satisfy each. *Id.* at 632-33. Indeed, "[n]either

6    intent nor actual confusion is necessary to establish a likelihood of confusion." *Dodum*, 2012 WL

7    5833562 at *4 (citing *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir.

8    1988)). "The critical determination is 'whether an alleged trademark infringer's use of a mark

9    creates a likelihood that the consuming public will be confused as to who makes what product.'"

10   *Jada Toys*, 518 F.3d at 632 (quoting *Brother Records, Inc. v. Jardine*, 318 F.3d 900, 908 (9th Cir.

11   2003)).

12        Here, Chanel's allegations establish both that it has a protectable interest in the marks and that

13   Ms. Charles's continued use of the marks is likely to cause confusion. First, it owns more than 50

14   federal trademark registrations on the two marks, 42 of which are incontestable, and which date

15   back to 1925.[56] These registrations establish Chanel's protectable interest in the marks. *See Gallup*

16   *Inc. v. Business Research Bureau (PVT) Ltd.*, No. C 08-01577 WHA, 2009 WL 941756, at *2-3

17   (N.D. Cal. April 6, 2009) (finding plaintiff had protectable interest in trademarks that it owned and

18   registered with the USPTO).

19        Second, Ms. Charles's use of the marks is likely to cause confusion. The marks are strong:

20   they date back over 80 years, Chanel uses them on a wide range of products, the public has come

21   to associate the marks with Chanel-branded products, and yearly sales of mark-bearing products

22   "total hundreds of millions of dollars."[57] The goods sold and marks used by Chanel and Ms.

23   Charles are nearly identical: they include the same types of fashion and household goods and use

24   the same Chanel and CC Monogram marks.[58] Although there is no evidence of actual confusion

United States District Court
Northern District of California

---

[56] Compl. ¶¶ 11, 22-24, Ex. A.

[57] *Id.* ¶¶ 11-17, 19-22.

[58] *Id.* ¶¶ 11-15, 28, 31, 33, Ex. B.

(and none is needed), the court finds it probable based on the allegations. Both Chanel and Ms. Charles market the products (and therefore the marks) in similar ways: Chanel through authorized online retailers and its own website, and Ms. Charles through Shopify.com, Instagram, and Pinterest.[59] They also both target customers familiar with and interested in Chanel-branded products.[60] The goods are high-quality items, and Chanel alleges that Ms. Charles intentionally uses the marks to associate her products with Chanel's, thus taking advantage of the marks' public recognition and value.[61] And finally, both Chanel and Ms. Charles have expanded the number and types of products on which the marks are used, for example, to basketballs, surfboards, towels, lamps, and others.[62] Confusion is therefore likely.

Chanel's allegations therefore establish a protectable interest in the marks and the likelihood of confusion. Chanel's claims for federal trademark infringement and unfair competition consequently weigh in favor of default judgment.

### 2.2.2 Federal false advertising claim

Chanel seeks relief for Ms. Charles's advertising of her products as "Chanel Designer Home Décor" under 15 U.S.C. § 1125(a)(1)(B).[63] Section 1125(a)(1)(B) prohibits the use of "any word, term, name, symbol, or device . . . or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods[.]" In essence, it prohibits false advertising. *See Classic Media, Inc. v. Mewborn*, 532 F.3d 978, 990-91 (9th Cir. 2008).

To state a Lanham Act false-advertising claim, a plaintiff must show: "(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the

---

[59] *Id.* ¶¶ 18, 27.

[60] *Id.* ¶ 34.

[61] *Id.* ¶¶ 19, 30, 32, 37.

[62] *Id.* ¶¶ 13-15, 28, 31, 33.

[63] *Id.* ¶¶ 63-68.

United States District Court
Northern District of California

1   statement actually deceived or has the tendency to deceive a substantial segment of its audience;

2   (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the

3   defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or

4   is likely to be injured as a result of the false statement, either by direct diversion of sales from

5   itself to defendant or by a lessening of the goodwill associated with its products." *Southland Sod*

6   *Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) (citing *Cook, Perkiss and Liehe,*

7   *Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 244 (9th Cir. 1990)). "To demonstrate falsity

8   within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false,

9   either on its face or by necessary implication, or that the statement was literally true but likely to

10  mislead or confuse consumers." *Id.* (citing *Castrol Inc. v. Pennzoil Co.,* 987 F.2d 939, 943, 946

11  (3d Cir.1993)).

12       Here, Chanel alleges that Ms. Charles falsely advertises her goods as Chanel products on the

13  Internet.[64] More specifically, on the Croquis Home Décor Pinterest page, Ms. Charles refers to

14  CC-Monogramed lamps as "Chanel Designer Home Décor."[65] This statement is literally false

15  because, according to Chanel, the goods are not its products and it never licensed or otherwise

16  authorized Charles to use its marks.[66] Moreover, because consumers expect the marks to designate

17  Chanel-brand products, Ms. Charles's advertisement is likely to deceive consumers into believing

18  that her products are Chanel's.[67] The deception is material because, if believed, a consumer may

19  purchase the products because he or she believes them to be true Chanel. The deception is also

20  likely to associate Ms. Charles's business with Chanel, taking advantage of (and putting at risk)

21  Chanel's reputation and goodwill — goodwill that it has "built up . . . through years of substantial

22  investment and effort[.]"[68]

---

25  [64] *Id.* ¶ 35, 63-68; Motion at 18-19.

26  [65] Compl. ¶ 35, Ex. D.

     [66] *Id.* ¶ 36.

27  [67] *Id.* ¶¶ 32-33.

28  [68] *Id.* ¶¶ 32, 40.

Chanel's allegations thus establish that Ms. Charles's advertisement is false and likely to mislead. This claim accordingly weighs in favor of default judgment.

### 2.2.3 Federal trademark-dilution claim

Chanel also sues Ms. Charles for trademark dilution under 15 U.S.C. § 1125(c).[69] "A plaintiff seeking relief under federal anti-dilution law must show [1]] that its mark is famous and distinctive, [2]] that defendant began using its mark in commerce after plaintiff's mark became famous and distinctive, and [3]] that defendant's mark is likely to dilute plaintiff's mark." *Visa Int'l Serv. Ass'n v. JSL Corp.*, 610 F.3d 1088, 1089-90 (9th Cir. 2010) (citing *Jada Toys*, 518 F.3d at 634). Chanel satisfies these elements.

First, Chanel's allegations show that the two marks are famous and distinctive. "[A] mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). Courts may consider "all relevant factors" to determine if a mark is famous, including: i) the duration, extent, and geographic reach of the mark's advertising and publicity; ii) the amount, volume, and geographic extent of the sales; iii) the extent of actual recognition of the mark; and iv) whether the mark was registered under previous acts. *Id.* § 1125(c)(2)(A)(i)–(iv).

Here, Chanel's marks are "featured prominently in national print and television advertising seen regularly by hundreds of millions of people[.]"[70] Chanel also advertises and promotes the marks on its own and third-parties' websites and the fashion press frequently highlights products bearing the marks.[71] The marks have been registered since 1925 and are "among the most recognized and popular marks in the U.S[,]" and consumers have come to "associate Chanel with any goods on which its iconic marks are placed."[72] The yearly sales of mark-bearing products

---

[69] *Id.* ¶¶ 69-75; Motion at 19-20.

[70] Compl. ¶ 20.

[71] *Id.* ¶¶ 20-21.

[72] *Id.* ¶¶ 17, 20, 22.

1    "total in the hundreds of millions of dollars."[73] The marks therefore are widely recognized by the

2    consuming public, and they are famous. *See Chanel v. P'ships & Unincorporated Ass'ns*

3    *Identified in Schedule "A"*, 12-CV-2085 (GHM), 2013 WL 5425252, at *2 (S.D. Tex. Sept. 26,

4    2013) ("[T]he Chanel Marks qualify as famous[.]").

5        Second, the allegations support the conclusion that Ms. Charles began using Chanel's marks

6    after they became famous. Chanel has used the marks for over 80 years; their registrations date to

7    1925.[74] Chanel also alleges that Ms. Charles began using the marks to associate her goods with

8    Chanel's reputation and goodwill.[75] These facts indicate that Ms. Charles began using the marks

9    not only after they became famous, but also because they are famous.

10       Third, the complaint establishes that Ms. Charles's use is likely to dilute Chanel's marks by

11   blurring.[76] Dilution by blurring is the "association arising from the similarity between a mark . . .

12   and a famous mark that impairs the distinctiveness of the famous mark." 15 U.S.C.

13   § 1125(c)(2)(B); *Jada Toys*, 518 F.3d at 635. This occurs "when a mark previously associated

14   with one product also becomes associated with a second[,] . . . weaken[ing] the mark's ability to

15   evoke the first product in the minds of consumers." *Visa Int'l Serv. Ass'n*, 610 F.3d at 1090.

16   Courts may consider "all relevant factors" to determine if a mark is blurred, including: i) the

17   degree of similarity between the marks; ii) the degree of the famous mark's inherent or acquired

18   distinctiveness; iii) the extent of the famous-mark owner's exclusive use; iv) the degree of the

19   famous mark's recognition; v) the alleged infringer's intent to associate with the famous mark; and

20   vi) actual association between the mark and the famous mark. 15 U.S.C. § 1125(c)(2)(B)(i)–(vi).

21       Here, the marks and products are identical or very similar,[77] the marks are distinctive in the

22   public's mind,[78] and Chanel has a history of exclusive use.[79] Chanel moreover alleges that Ms.

23   _____

24   [73] *Id.* ¶ 19.

     [74] *Id.* ¶¶ 11, 22.

25   [75] *Id.* ¶¶ 39-40.

26   [76] *Id.* ¶¶ 69-75; Motion at 20.

27   [77] *See, e.g.*, Compl. ¶¶ 12-15, 28, 31, 33.

     [78] *Id.* ¶ 17, 25.

28   [79] *Id.* ¶ 25.

United States District Court
Northern District of California

United States District Court
Northern District of California

Charles uses the two marks "with full and knowing intent of trading on Chanel's rights" and "to create an association with Chanel" — "falsely suggest[ing] that they come from Chanel."[80] Ms. Charles's use of the two marks will likely weaken the marks' ability to evoke Chanel's products in consumers' minds because consumers will associate Channel- and CC Monogram-marked products with both Ms. Charles and Chanel.

Accepting Chanel's allegations as true, then, the two marks are famous, Ms. Charles began using the marks after they became famous, and her continued use is likely to cause dilution by blurring. Chanel's claim for trademark dilution thus weighs in favor of default judgment.

### 2.2.4 State-law claims

Chanel asserts claims for unfair competition and dilution under California law.[81] *See* Cal. Bus. & Prof. Code §§ 17200 *et seq.*, 14330 *et seq.* Courts use the same tests for these claims under both federal and California law. *See Jada Toys*, 518 F.3d at 634; *Century 21 Real Estate Corp.*, 846 F.2d at 1180; *Levi Strauss & Co.*, 665 F. Supp. 2d at 1097. Therefore, because the merits and sufficiency of Chanel's federal claims weigh in favor of default judgment, so do its state-law claims.

### 2.3 Sum of money at stake (fourth *Eitel* factor)

The fourth *Eitel* factor considers the amount of money at stake in the litigation. When the money is substantial or unreasonable, default judgment is discouraged. *See Eitel*, 782 F.2d at 1472 (three-million dollar judgment, considered in light of parties' dispute as to material facts, supported decision not to enter default judgment); *Tragni v. Southern Elec. Inc.*, No. 09-32 JF, 2009 WL 3052635, at *5 (N.D. Cal. Sept. 22, 2009); *Board of Trustees v. RBS Washington Blvd, LLC*, No. C 09-00660 WHA, 2010 WL 145097, at *3 (N.D. Cal. Jan. 8, 2010). When the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be

---

[80] *Id.* ¶¶ 30, 32, 37.

[81] *Id.* ¶¶ 76-89.

1    appropriate. *See Board of Trustees of the Sheet Metal Workers Health Care Plan of N. Cal. v.*

2    *Superhall Mechanical, Inc.*, No. C-10-2212 EMC, 2011 WL 2600898, at *2-3 (N.D. Cal. June 20,

3    2011) (the sum of money for unpaid contributions, liquidated damages, and attorneys' fees were

4    appropriate as they were supported by adequate evidence provided by the plaintiffs).

5         Here, Chanel does not seek monetary relief, only a permanent injunction. The sum of money at

6    stake therefore does not counsel against default judgment.

7

8    **2.4 Possibility of a factual dispute or excusable neglect (fifth and sixth *Eitel* factors)**

9         The fifth and sixth *Eitel* factors consider the potential of factual disputes and whether a

10   defendant's failure to respond was likely due to excusable neglect. In *Eitel*, there was both a

11   factual dispute and excusable neglect. 782 F.2d at 1472. There, the defendant disputed material

12   facts in the (untimely) answer and counterclaim. *Id.* Moreover, the defendant's response was late

13   because the parties had previously agreed to "what appeared to be a final settlement agreement"

14   and "[the defendant] reasonably believed that the litigation was at an end." *Id.* Because of his

15   reasonable reliance and prompt response when the agreement dissolved, the defendant's failure to

16   respond timely appeared due to excusable neglect. *Id.*

17       Here, Chanel served Ms. Charles with the complaint and the current motion for default

18   judgment.[82] Unlike the defendant in *Eitel*, however, Ms. Charles has not presented a defense or

19   otherwise communicated with the court. There is consequently no evidence of a factual dispute or

20   excusable neglect. This factor supports default judgment.

21

22   **2.5 Policy favoring a decision on the merits (seventh *Eitel* factor)**

23       The seventh *Eitel* factor requires considering the strong policy favoring decisions on the

24   merits. *See Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985). Although

25   default judgment is disfavored, "[t]he very fact that F.R.C.P. 55(b) exists shows that this

26   preference, standing alone, is not dispositive." *Kloepping v. Fireman's Fund*, No. C 94-2684 TEH,

27

28   ───────────────
     [82] Summons Returned Executed – ECF No. 15; Certificates of Service – ECF Nos. 22, 24.

United States District Court
Northern District of California

1   1996 WL 75314, at *3 (N.D. Cal. Feb. 13, 1996). "While the Federal Rules do favor decisions on

2   the merits, they also frequently permit termination of cases before the court reaches the merits[,]

3   . . . [as] when a party fails to defend against an action[.]" *Id.*

4       Here, Ms. Charles not only failed to respond or otherwise appear in the action, but also, she

5   apparently is actively avoiding the lawsuit.[83] Because of her refusal to participate, litigation on the

6   merits is not possible. This factor consequently supports default judgment.

7       In sum, all of the *Eitel* factors weigh in favor of entering default judgment. The court next

8   considers Chanel's requested injunctive relief.

9

### 3.   Relief sought — permanent injunction

11      In its complaint, Chanel sought both injunctive and monetary relief.[84] In its motion for default

12  judgment, however, it seeks only a permanent injunction.[85] The issue is whether it is entitled to

13  injunctive relief and, if so, whether the requested relief is narrowly tailored to the alleged

14  wrongdoing. The court concludes that an injunction is appropriate but recommends relief that is

15  more narrowly tailored than the relief that Chanel seeks in its proposed order at ECF No. 21-1.

16      The Lanham Act authorizes permanent injunctions and, generally, "[i]njunctive relief is the

17  remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at

18  law for the injury caused by a defendant's continuing infringement." *Century 21 Real Estate

19  Corp.*, 846 F.2d at 1180; 15 U.S.C. § 1116. To determine if injunctive relief is appropriate in a

20  particular case, "district courts should apply 'traditional equitable principles[.]'" *Reno Air Racing

21  Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1137 (9th Cir. 2006). Those traditional equitable principles

22  require a plaintiff to demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies

23  available at law . . . are inadequate to compensate for that injury; (3) that, considering the balance

24  of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the

25

26

---

[83] *See generally* Docket. *See also* Order Authorizing Alternative Service – ECF No. 14 at 1-3.

[84] Compl. at 17-21.

[85] *See* Motion at 20, 22-23; Proposed Order – ECF No. 21-1.

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

1    public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange,*

2    *LLC*, 547 U.S. 388, 391 (2006).

3        Here, traditional equitable principles weigh in favor of an injunction. Chanel has suffered

4    irreparable injury and legal remedies are inadequate: it has shown that Ms. Charles is infringing its

5    marks and falsely advertising that its products are from Chanel. If an injunction is not entered, Ms.

6    Charles will continue selling Chanel-marked products, wresting control of and usurping Chanel's

7    reputation and goodwill. Monetary damages cannot compensate for this loss. The balance of

8    hardships also favors an injunction and the public's interest is not disserved; if anything, the

9    public will benefit from clarity of branding and association. Equity therefore favors an injunction

10    in this case.

11        The next issue is the appropriate scope of injunctive relief. Federal Rule of Civil Procedure

12    65(d) requires that "[e]very order granting an injunction . . . (A) state the reasons why it issued;

13    (B) state its terms specifically; and (C) describe in reasonable detail . . . the act or acts restrained

14    or required." Generally, an injunction must be narrowly tailored to remedy only the specific harms

15    shown by a plaintiff, rather than to enjoin all possible breaches of the law. *See Price v. City of*

16    *Stockton*, 390 F.3d 1105, 1117 (9th Cir. 2004); *Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d

17    1105, 1116 (9th Cir. 2012) ("Injunctive relief under the Lanham Act must be narrowly tailored to

18    the scope of the issues tried in the case."); *Iconix, Inc. v. Tokuda*, 457 F. Supp. 2d 969, 998 (N.D.

19    Cal. 2006).

20        Here, Chanel seeks an injunction generally prohibiting Ms. Charles from continued

21    infringement, deceptive advertising, and unfair competition.[86] To implement the injunction,

22    Chanel wants to prohibit Ms. Charles from destroying related business records, effecting run-

23    around transfers or assignments, or assisting third parties in performing any prohibited act.[87]

24    Chanel also seeks to have third-party selling platforms, social-media sites, and other service

25

26

27    _____

     [86] Proposed Order – ECF No. 21-1 at 6-10.

28    [87] *Id.* at 7-8.

1     providers temporarily disable Ms. Charles's accounts, de-index and remove Ms. Charles's sites

2     from search results, and permanently stop services connected to Ms. Charles's wrongful acts.[88]

3          Much of Chanel's proposed injunction is appropriate. But some of its proposed language is

4     broad and vague; the court narrows the language in its recommended injunction (below) to

5     narrowly tailor it to the harms caused by Ms. Charles. *See Swift & Co. v. United States*, 196 U.S.

6     375, 401 (1905). The court looked at similar injunctions in other cases as part of its effort to tailor

7     the injunction. The cases generally prohibited only trademark infringement and the other wrongful

8     conduct alleged in the litigation. *See, e.g.*, *Chanel*, 2012 WL 5833562 at *10 (illegal conduct). The

9     only additional relief that courts ordered was reassignment of infringing domain names, which is

10    not an issue here. *See, e.g.*, *Chanel Inc. v. Yang*, No. C 12-4428 PJH, 2013 WL 5755217, at *13-

11    *14 (N.D. Cal. Oct. 21, 2013) (conduct plus assignment of domain names). Chanel cited no

12    opinions where courts issued orders to third-party platforms to disable accounts and stop services.

13    The court's independent research revealed no opinions either. Thus, the court's recommended

14    injunction does not include the parts of Chanel's proposed order that are directed to third parties[89]

15    and instead follows opinions where the court directed the offending party to take the steps needed

16    to stop the offending conduct. *See, e.g.*, *Chimney Safety Inst. of Am. v. Chimney King*, No. C 03-

17    05814 WHA, 2004 WL 1465699, at * 5 (N.D. Cal. May 27, 2004).

18         The court's recommended injunction otherwise tracks Chanel's language — except that the

19    court simplified some of the language and eliminated or consolidated repetitive language (at least

20    somewhat). But the court accepted Chanel's basic language to the extent that it asked for

21    appropriate relief and did not — for example — substitute language from the opinions merely on

22    the ground that other courts used that language.

23

24

25

26

27    [88] *Id.* at 8-10.

28    [89] *See, e.g.*, *id.* at 9, ¶ 6.

# CONCLUSION

The court directs the Clerk of Court to reassign the case to a district judge and recommends that the district judge grant Chanel's motion for default judgment, dismiss the lawsuit against the Doe defendants without prejudice,[90] and enter the following permanent injunction.

1.  The defendant Teresa Charles a/k/a Teresa Porter d/b/a Suite888 and d/b/a Croquis Décor (and any company or entity now or in the future that she owns, manages, controls, or participates in, in whole or in part) are hereby permanently enjoined and forever restrained from:

    a)  manufacturing, causing to be manufactured, importing, advertising, promoting, displaying, distributing, selling, or offering to sell through any channels of trade or any media any goods bearing the Chanel trademarks (including the Chanel or CC Monogram trademarks) (hereafter, the "Chanel Marks");

    b)  using or commercializing the Chanel Marks, or any simulation, reproduction, copy, or colorable imitation of them, in or on any product, packaging, or otherwise using such a mark in connection with the importation, promotion, display, advertisement, sale, offering for sale, manufacture, production, distribution, or dissemination of any business, product, or service;

    c)  falsely advertising products as Chanel products or falsely representing that goods are affiliated with or endorsed by Chanel;

    d)  claiming to be associated with Chanel or performing acts that lead or are likely to lead members of the trade or public to believe that Ms. Charles is associated with Chanel or that any product that she imported, manufactured, displayed, promoted, advertised, distributed, or sold is in any manner associated or connected with Chanel, or is authorized, licensed, sponsored, or otherwise approved by Chanel;

    e)  transferring, assigning, consigning, selling, shipping, or otherwise moving any goods, packaging, or other materials in Ms. Charles's possession, custody, or

---

[90] *See* Chanel's Proposed Order – ECF No. 21-1 at 9, ¶ 6 (dismissal of Doe defendants).

United States District Court
Northern District of California

control that bear the Chanel Marks or are represented as being affiliated with or

endorsed by Chanel in an attempt to avoid the prohibitions in this injunction; and

f)   assisting, aiding, or abetting any other person or business entity in engaging in or

performing any of the activities referred to in subparagraphs a) through e) above.

2.   Ms. Charles must deliver to Chanel's attorneys for destruction all goods, labels, tags,

signs, stationery, prints, packages, promotional and marketing materials,

advertisements, and other materials currently in her possession or under her control,

incorporating, featuring, or bearing the Chanel Marks and all plates, molds, matrices

and other means of making the same.

3.   Ms. Charles must scrub any websites, social media sites, or platforms through which

she sold, advertised, or provided goods bearing any of the Chanel Marks, including

Shopify, Instagram, and Pinterest, and take all other actions as are necessary to ensure

that all references to any products that bear the Chanel Marks, all references to the

Chanel Marks, and all references that suggest affiliation with or endorsement by

Chanel are permanently deleted or removed.

4.   If Chanel discovers any use of the Chanel Marks by Ms. Charles following issuance of

this order, it may bring such use to the court's attention. Upon making a sufficient

showing that such conduct violates this order, the court may enter an appropriate order

finding Ms. Charles in contempt of this permanent injunction. (The court thus retains

jurisdiction over the dispute for the purpose of simple enforcement of the permanent

injunction.)

The court directs Chanel to serve a copy of this order on Ms. Charles by email to

croquisdecor@gmail.com (as permitted by the court's order authorizing alternative service by

email).[91]

Any party may file objections to this report and recommendation with the district judge within

fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);

---

[91] Order – ECF No. 14.

1   N.D. Cal. Civ. L.R. 72. Failure to file an objection may waive the right to review of the issue in

2   the district court.

3       **IT IS SO ORDERED.**

4       Dated:  June 9, 2016       _____

5                                   LAUREL BEELER
                                    United States Magistrate Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28